UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD P. F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 2:26-CV-1721-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his application for supplemental security income ("SSI").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating certain medical opinion evidence. Had the ALJ properly considered this medical opinion, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned United States Magistrate Judge. *See* Dkt. 2.

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed his application for SSI on August 23, 2019, alleging disability as of January 1, 1997. Administrative Record ("AR") 133–34. His claim was denied initially on February 19, 2020, and upon reconsideration on February 8, 2021. AR 133, 145. A hearing was held before ALJ Glenn Meyers on May 30, 2023, AR 40, who issued a decision denying Plaintiff's claim on July 6, 2023. AR 167–78. The Appeals Council remanded the matter on March 15, 2024. AR 184.

The matter came on for a second hearing on October 9, 2024, AR 79, and on November 16, 2024, ALJ Evangeline Mariano-Jackson ("the ALJ") entered another decision concluding that Plaintiff was not disabled. AR 194–204. On February 3, 2025, the Appeals Council vacated and remanded the ALJ's 2024 decision. AR 211.

The matter came on for a third hearing on October 31, 2025, AR 108, and on December 8, 2025, the ALJ entered a third decision concluding that Plaintiff was not disabled. AR 17–32. The Appeals Council denied Plaintiff's request for review on March 17, 2026, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. From this decision, Plaintiff filed a complaint with this Court on May 21, 2026, seeking judicial review of the ALJ's decision denying benefits. Dkt. 5.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues that the ALJ erred in evaluating certain medical opinion evidence. Dkt. 13 at 2–18. The Court agrees.

### A. Medical Opinion Evidence

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

*i. Dr. Widlan*

Dr. Widlan conducted an examination on behalf of Plaintiff's disability claim on January 16, 2021. AR 949. In Dr. Widlan's opinion, Plaintiff, *inter alia*, "does not appear able to persist with adequate pace[,]" he "would become easily distracted and disorganized and would be prone to difficulties with reliability. He likely will struggle to consistently negotiate simple social stressors on a routine basis due to characterological issues. He appears to have significant deficits in [activities of daily living]." AR 952.

The ALJ found Dr. Widlan's opinion was not persuasive. AR 30. As for supportability, the ALJ found the opinion "poorly supported because [Dr. Widlan] had limited knowledge of the

overall diagnostic picture on which to form an opinion. [Dr. Widlan] saw [Plaintiff] on a single occasion and reviewed no treatment notes or other records apart from the June 2019 DSHS assessment of Dr. Bowes." *Id.*

Nonetheless, as Plaintiff argues, the regulations do not require an examining physician to review records in order to produce a probative opinion regarding a claimant's functioning; rather, the value of an examination is "in the opportunity to clinically observe and test the [claimant,]" and the regulations recognize that a "medical source may have a better understanding of [a claimant]'s impairment(s) if he or she examines [the claimant] than if the medical source only reviews the evidence in [the claimant's] folder." Dkt. 13 at 4–5; 20 C.F.R. § 416.920c(c)(3)(v); 20 C.F.R. § 404.1520c(c)(3)(v); *see also Fawaz A. v. Comm'r of Soc. Sec.*, No. C22-0411-MAT, slip op. at 7 (W.D. Wash. Feb. 27, 2023) (holding that "the ALJ did not properly reject [the examining doctor's] opinion on grounds that [the examining doctor] did not review more records.").

Moreover, as Plaintiff argues, despite finding the opinion unsupported, the ALJ "conceded that while Dr. Widlan's observations including that [Plaintiff] was 'disheveled and had disorganized, tangential thought processes, and significant concentration deficits' upon MSE" could "*reasonably support* many of Dr. Widlan's assessed limitations." Dkt. 13 at 5; AR 30 (emphasis added). For these reasons, the Court concludes that the ALJ's supportability findings were not supported by substantial evidence.

As for consistency, the ALJ found that "neither Dr. Widlan's findings nor his assessed limitations are consistent with the longitudinal treatment record and [Plaintiff]'s activities." *Id.* Specifically, the ALJ found the opinion inconsistent with Plaintiff "attend[ing] limited mental

health treatment;[3] report[ing] improved symptoms with medication;[4] and ha[ving] a mostly unremarkable mental status presentation" in that Plaintiff "was calm, cooperative, awake, and alert, with no abnormalities in grooming, hygiene, eye contact, speech attention, and cognition. His thought processes were linear and organized." *Id.*

First, Plaintiff argues that "[t]he ALJ's claim regarding [Plaintiff's mostly unremarkable mental status] presentation is both a case of selective citation and an erroneous attempt to interpret clinical evidence by the ALJ[,]" because the ALJ "omitted mention of other presentation at similar appointments and even notable presentation at the same appointments she cited to." Dkt. 13 at 7.[5] Accordingly, Plaintiff argues that the ALJ "inappropriately cherry-picked the evidence of Plaintiff's presentation to support her characterization of [Plaintiff's] presentation." *Id.* at 9.

---

[3] Although the ALJ discounted Dr. Widlan's opinion because Plaintiff attended "limited mental health treatment[,]" AR 30, courts in this jurisdiction have repeatedly emphasized that "the fact that [the claimant] may be one of millions of people who did not seek treatment for a mental disorder until late in the day *is not a substantial basis* on which to conclude that [a doctor's] assessment of [the] claimant's conditions is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (emphasis added). Indeed, it has long been recognized that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* Accordingly, the Court concludes that this was not a valid basis for the ALJ to reject Dr. Widlan's opinion.

[4] Plaintiff argues that improvement "is a relative concept, and without more measures of how the improvement was inconsistent with the limitations assigned by [Plaintiff's] treating providers[,] this is too vague to constitute a legitimate basis for setting aside [Dr. Widlan's] opinion." Dkt. 13 at 6. Indeed, as Plaintiff argues, "doing well for purposes of a treatment program has no necessary relation to a claimant's ability to work or to [the claimant's] work-related functional capacity." *Garrison*, 759 F.3d at 1018; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding that "a person who suffers from severe panic attacks, anxiety, and depression mak[ing] some improvement does not mean that the person's impairments no longer seriously affect [their] ability to function in a workplace"). For these reasons, the Court concludes that this too, was not a valid basis for rejecting Dr. Widlan's opinion.

[5] Plaintiff also argues that some of the ALJ's citations for an inconsistency with Dr. Widlan's opinion were from "providers attending to [Plaintiff's] physical health conditions and [were] not focused upon her mental health symptoms." Dkt. 13 at 7. The Court agrees that the ALJ's citations to non-mental health appointments as evidence of an inconsistency with Dr. Widlan's opinion as to Plaintiff's mental health was erroneous. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (holding that "substantial evidence does not support" the ALJ's finding because "no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, [so to] it is unreasonable to expect [the claimant's] examining physicians [to] under[take] a thorough range of motion of [the claimant's] right thumb.").

Indeed, as Plaintiff argues, "Dr. Widlan's opinion is entirely consistent with the opinions of three examining psychologists and two treating providers[,]" and the ALJ "omitted mention of" clinical observations that *were consistent* with Dr. Widlan's opinion. *Id.* Specifically, Plaintiff was observed to be "depressed[,]" he had a dysthymic effect, constricted effect, poor attention and concentration, passive suicidal ideation, and was "disorganized and depressed." *See id.* at 8–9; AR 817, 833, 880, 917, 1369.[6]

Here, the ALJ's "paraphrasing of record material [regarding Plaintiff's mostly unremarkable mental status] is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998). It is well-established that an ALJ errs when they have "cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Moreover, although the ALJ points to many appointments where Plaintiff presented with purportedly "unremarkable mental status presentation[,]"as Plaintiff argues, the ALJ did not explain why these findings, that Plaintiff "was calm, cooperative, awake, and alert, with no abnormalities in grooming, hygiene, eye contact, speech attention, [ ] cognition[, and] [h]is thought processes were linear and organized"—findings predominately derived from appointments where Plaintiff's mental health was not being evaluated—were inconsistent with Dr. Widlan's opinion that Plaintiff "does not appear able to persist with adequate pace[,]" he "would become easily distracted and disorganized and would be prone to difficulties with

---

[6] Plaintiff also notes that some of the ALJ's citations for a purported inconsistency "contain[ ] no related information at all." Dkt. 13 at 8; *see also* AR 977.

reliability. He likely will struggle to consistently negotiate simple social stressors on a routine basis due to characterological issues. He appears to have significant deficits in ADL's." AR 30, 952; *see also Swanson v. Bisignano*, No. 24-4926, 2025 WL 2779300, at *2 (9th Cir. Sep. 30, 2025) (holding that the ALJ erred in rejecting a medical opinion because the ALJ "did not explain how general observations [such as 'consistently alert and oriented' and 'normal mood and affect'] from physicians who were not evaluating [the plaintiff]'s mental health contradict [the medical] opinion.").

Finally, the ALJ found Dr. Widlan's opinion inconsistent with a purported "unrestricted range of activities" including using "the public bus, shop[ping] for himself, manag[ing] his medical care, [ ] travel[ing] to Atlanta, GA, Santa Cruz, CA, and Portland, OR[,]" and "avail[ing] himself of housing resources and other assistance." AR 30. Plaintiff argues that "the ALJ's references regarding activities is so vague as to lack the specificity necessary to undermine the opinion of Dr. Widlan" because "[i]t is unclear how the cited activity reflects on the limitations at issue, such as the ability to persist at an adequate pace and negotiate simple social stressors on a routine basis[.]" Dkt. 13 at 5–6.

The Court agrees with Plaintiff; it is unclear to the Court how these cited activities necessarily conflict with Dr. Widlan's opinion that Plaintiff "does not appear able to persist with adequate pace[,]" he "would become easily distracted and disorganized and would be prone to difficulties with reliability. He likely will struggle to consistently negotiate simple social stressors on a routine basis due to characterological issues. He appears to have significant deficits in ADL's." AR 952. It is fundamental that an ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the

evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sep. 22, 2022) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). Here, with Plaintiff's activities of daily living necessarily preempting disability, the ALJ has failed to do so, and for this reason, the Court concludes that the ALJ's consistency findings are not supported by substantial evidence. Consequently, the ALJ erred in evaluating Dr. Widlan's opinion evidence.

A. <u>Harmless Error Analysis</u>

Applying the harmless error analysis requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made " 'without regard to errors' that do not affect the parties' 'substantial rights.' " *Molina*, 674 F.3d at 1118–19 (citations omitted). Here, the Court concludes that, had the ALJ properly considered Dr. Widlan's opinion, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. For this reason, the Court concludes that the ALJ committed harmful error in evaluating the medical opinion evidence, and the proper disposition is to reverse and remand the matter for further proceedings consistent with this order.

B. <u>Remaining Issues</u>

In light of this disposition, the Court need not consider Plaintiff's remaining arguments regarding the medical opinion evidence, because upon remand, the ALJ is instructed to reconsider the entire Social Security evaluation process, including all of the medical opinion evidence. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal.

Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

**ii. Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 16th day of November, 2026.

David W. Christel
United States Magistrate Judge